# In the United States Court of Federal Claims

BID PROTEST
No. 18-1260C
(Filed Under Seal: November 20, 2018 | Reissued: November 28, 2018)[*]

| | |
|---|---|
| RMGS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>    Defendant,<br><br> and<br><br>PAE GOVERNMENT SERVICES, INC.,<br><br>    Defendant-Intervenor. | Keywords: Bid Protest; 28 U.S.C. § 1491; Organizational Conflict of Interest; Standing; Interested Party; Waiver; Interested Party; <u>Blue & Gold Fleet, L.P. v. United States</u>; <u>COMINT Systems Corp. v. United States</u>. |

*Michael John Gardner*, Greenberg Traurig LLP, McLean, VA, for Plaintiff. *Shomari B. Wade* and *Brett A. Castellat*, Greenberg Traurig LLP, McLean, VA, Of Counsel.

*Russell James Upton*, Trial Attorney, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Claudia Burke*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Joseph H. Hunt*, Assistant Attorney General. *Kathleen D. Martin*, Attorney Adviser, Office of Buildings and Acquisitions, U.S. Department of State, Arlington, VA, Of Counsel.

*Anuj Vohra*, Crowell & Moring LLP, Washington, DC, for Defendant-Intervenor. *Robert J. Sneckenberg*, Crowell & Moring LLP, Washington, DC, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

  This is a post-award bid protest. Plaintiff RMGS, Inc. ("RMGS") challenges the State Department's ("State") decision to disqualify it from competition for one contract because of its

---

[*] This opinion was originally issued under seal and the parties were given the opportunity to request redactions. The opinion is now reissued with redactions noted in brackets.

status as the awardee of another, related contract. The disqualification was based on organizational conflict-of-interest ("OCI") grounds.

The government and Defendant-Intervenor PAE Government Services, Inc. ("PAE") argue primarily that RMGS's protest must fail because it waived its protest rights when it waited until after the second of the two contracts was awarded to file its protest. The government and PAE also argue that RMGS lacks standing because it does not qualify as an "interested party," and that, in any event, RMGS's protest fails on the merits.

All three parties have filed motions for judgment on the administrative record ("MJARs"). ECF Nos. 31, 37, 38. The government has also filed a motion to dismiss for lack of subject matter jurisdiction along with its MJAR. ECF No. 37. For the reasons set forth below, the Court agrees with the government and PAE that RMGS has not established that it is an "interested party" with standing to protest the award at issue. It lacks standing because it has not shown that it would have had a substantial chance of winning the award but for its disqualification on OCI grounds. Furthermore, even assuming RMGS has standing, it waived its objections to the disputed OCI clause by not filing a pre-award protest. Therefore, the government's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**.

## BACKGROUND

### I. The AFRICAP, ACOTA, and Advisory RFPs

There are three State solicitations relevant to the facts underlying this bid protest, although one of those three solicitations plays a more indirect role than the others. Each of the three solicitations was issued by State's Bureau of African Affairs, Office of Regional and Security Affairs, which "supports U.S. foreign policy goals in sub-Saharan Africa through a variety of programs and policies designed to bolster peace, security and regional stability." AR Tab 77 at 5678. The Court will review each solicitation in the order it was issued.

Solicitation SAQMMA15R022 ("the AFRICAP RFP") was issued in January 2015. Pl.'s Mem. in Supp. of Pl.'s MJAR ("Pl.'s Mem.") at 12, ECF No. 29-1.[1] Under AFRICAP, contract awardees would "provide training, logistics services, and construction support to African countries and regional organizations to enhance their capacity to prevent, manage, and resolve their own conflicts." Id. RMGS submitted an AFRICAP proposal on June 19, 2015. Id.

The next solicitation that State issued was the "ACOTA RFP," Solicitation SAQMMA15R0318, on July 7, 2015. AR Tab 5 at 107. The ACOTA RFP called for awardees to provide "training, equipment, logistical and technical support and construction services to African countries and organizations, to include: field training for African peacekeepers plus staff training and exercise for battalion, brigade, and multinational force headquarter personnel." AR Tab 5a at 112. The government anticipated awarding three to five indefinite-delivery, indefinite-

---

[1] The AFRICAP RFP is not in the Administrative Record because it is only tangentially related to this bid protest. The Court includes these undisputed facts from Plaintiff's MJAR for general background.

quantity ("IDIQ") contracts—up to three of which would be set aside for eligible service-disabled veteran-owned small businesses—under the ACOTA RFP. Id. at 112, 240.

State received a total of twenty-nine offers in response to the ACOTA RFP—twenty-two from small businesses (including RMGS) and seven from large businesses. AR Tab 31 at 3075–76. RMGS submitted its proposal on January 21, 2016. Id. at 3076.

Two months later, on March 10, 2016—before any award under either the AFRICAP or ACOTA RFP—State issued the third solicitation at issue in this bid protest: the "Advisory RFP," Solicitation SAQMMA16R0197. AR Tab 50 at 4519. Under the Advisory contract, awardees would be responsible for providing "advisory and technical support to African countries and organizations, as well as to U.S. Embassy country teams." AR Tab 50a at 4520. State anticipated awarding three IDIQ contracts under the Advisory RFP. Id. at 4621.

According to Contracting Officer Michael Dickson, the Advisory RFP was issued after the other two RFPs "because the identification of a separate advisory services requirement arose after the ACOTA solicitation was issued." Decl. of Michael Dickson ¶ 6, ECF No. 37-1. State had initially planned to "include[] advisory services as part of the ACOTA statement of work," but "[a]n actual or future organizational conflict was identified by the Contracting Office in conjunction with the Program Office." Id. "Accordingly, the advisory services were separated out and solicited under a stand-alone solicitation, the Advisory Services solicitation." Id. The nature of the anticipated conflict, according to Mr. Dickson, was as follows:

> [F]irms that received awards resulting from [the Advisory RFP] would be advising various sections of numerous African countries directly. By conducting the advisory services to African governments, the awardee under the Advisory IDIQ may be privy to information which would otherwise be privileged, and such access may provide a competitive advantage in preparing proposals under the ACOTA IDIQ. Additionally, an awardee under the Advisory IDIQ may have opportunities to directly influence actors within those African governments, and generate work under the ACOTA IDIQ through the advisory services provided to African governments, thus realizing a benefit under the ACOTA IDIQ as a result of work performed under the Advisory IDIQ.

AR Tab 77 at 5679–80.

On account of the "actual or future organizational conflict" identified by the Contracting Office and the Program Office, the Advisory RFP included the following clause ("the OCI clause") in clause H.12 of the solicitation: "Any award resulting from the competition under this Solicitation [(i.e., the Advisory RFP)] will preclude award under Solicitation Numbers SAQMMA15R0022 (AFRICAP) and SAQMMA15R0318 (ACOTA)." Tab 50a at 4567. In other words, any contractor who received an award under the Advisory RFP would be ineligible to receive an award under either AFRICAP or ACOTA.

3

**II.    The State Department's Responses to Questions Regarding the Preclusive Effect of an Award Under the Advisory RFP**

In response to the OCI clause in the Advisory RFP, RMGS and several other prospective offerors raised concerns about the preclusive effect that awards under the Advisory RFP would have with regard to the AFRICAP and ACOTA RFPs. For instance, one prospective offeror asked: "Can a company be awarded the [Advisory] contract and also be awarded the AFRICAP and/or ACOTA contracts?" AR Tab 54c at 4883 (Questions and Answers).[2] State answered: "No. Refer to Clause H.12. An award of an [Advisory] IDIQ contract will preclude award of the AFRICAP or ACOTA IDIQ contract." Id.

Additionally, multiple prospective offerors asked if the government would consider delaying evaluations under the Advisory RFP and/or holding open the proposal period until after ACOTA and AFRICAP contracts were awarded. State was also unequivocal on this point, stating, "[a]n extension of this RFP pending award of the AFRICAP and ACOTA IDIQ contracts will not be granted." Id. In addition, in response to a question as to whether the government would hold discussions with potential Advisory awardees to allow them to "opt out" in favor of AFRICAP and/or ACOTA, State explained:

> Offerors, who have submitted proposals to both this RFP and either the AFRICAP or ACOTA RFP, may rescind proposals submitted in response to the AFRICAP and ACOTA RFPs, or to Advisory and Reporting Services RFP. Apparent successful offerors will be contacted prior to award, and be given the opportunity to rescind their proposal. Pursuant to clause H.12(e), and H.12(f), any award resulting from the competition under this Solicitation will preclude award under Solicitation Numbers SAQMMA15R0022 (AFRICAP) and SAQMMA15R0318 (ACOTA).

Id. at 4884.

In sum, State made no promises or representations that offerors would learn their status under the AFRICAP and ACOTA contracts prior to award (and therefore possible preclusion) under the Advisory contract. However, State noted that apparent successful offerors under the Advisory RFP would be given an opportunity to "opt out" of that solicitation by rescinding their proposals, thus maintaining their eligibility for award under the other two RFPs.

According to RMGS, it sought "clarification" from State as to the Advisory RFP's OCI clause "in a series of emails beginning" in March 2016 wherein RMGS "expressed its concern" about the clause. Compl. ¶ 17, ECF No. 1; see also AR Tab 84 (email chain). RMGS alleges that after one meeting with officials from State on March 24, the agency went "dark" and was unresponsive to further requests for clarification. Compl. ¶ 17.

---

[2] The Questions and Answers were incorporated into Amendment A003 to the Advisory RFP, issued on April 4, 2016. See AR Tab 54 at 4659.

4

## III. RMGS Accepts Award of Advisory Contract Notwithstanding That Doing So Would Preclude an Award of Either the AFRICAP or ACOTA Contracts

State received nine proposals in response to the Advisory RFP (Def.'s MJAR, Dickson Decl. ¶ 2), including the one filed by RMGS on May 10, 2016 (Compl. ¶ 18, ECF No. 1). On September 15, 2016, RMGS received an email from State notifying RMGS that it was "an apparent successful offeror under the [Advisory] RFP." AR Tab 57 at 5345. The email then repeated the OCI provisions of the Advisory RFP verbatim: "Any award resulting from the competition under this Solicitation will preclude award under [AFRICAP] and [ACOTA]. Any award resulting from the competition under this Solicitation will preclude awardees from accepting AFRICAP or ACOTA subcontracts." Id. The email continued on to repeat the government's explanation from the Questions and Answers that "[a]pparent successful offerors will be contacted prior to award, and be given the opportunity to rescind their proposal." Id. The email concluded by asking RMGS whether it, "[a]s an apparently successful offeror . . . wish[ed] to rescind [its] offer" for the Advisory RFP. Id. State gave RMGS until close of business the following day to respond—a time period of slightly more than twenty-four hours. Id.

The following morning, RMGS President Lynda Stafford responded to State, informing the agency that RMGS did not wish to rescind its offer. Id. Accordingly, on February 23, 2017, an Advisory RFP contract was awarded to RMGS. AR Tab 58 at 5347. Ms. Stafford signed the contract on RMGS's behalf on February 27, 2017. Id. The contract incorporated the same OCI clauses regarding the ACOTA and AFRICAP contracts from the Advisory RFP. Id. at 5397. Thus, the contract explicitly provided that the Advisory award would "preclude award" under ACOTA and AFRICAP and that the award would "preclude [RMGS] from accepting AFRICAP or ACOTA subcontracts." Id.

## IV. RMGS Learns It Did Not Receive an AFRICAP Award with No Mention of OCI-Related Disqualification

On May 3, 2017, State announced the award of AFRICAP contracts to Next Evolution Water Solutions ("NEWS"), Relyant, and SkyBridge Tactical. AR Tab 86 at 5969. RMGS timely requested a debriefing on May 5, 2017. Id. State provided a substantive debriefing identifying various weaknesses which led to RMGS's proposal being deemed technically unacceptable. Id. at 5969–74. Because the proposal was technically unacceptable, RMGS "was not included in the tradeoff process." Id. at 5974. Despite the fact that RMGS had previously accepted an Advisory contract award on February 23, 2017, the written debriefing issued on May 15, 2017 made no mention of RMGS being disqualified from the AFRICAP competition due to the OCI clause. See generally AR Tab 86.[3]

---

[3] The Court infers that—like the initial ACOTA evaluations (see below)—initial evaluations under AFRICAP were completed before the award of Advisory contracts. Although the government generally cites the Contracting Officer's Statement of Facts for this proposition (Def.'s Mot. at 8), upon review the statement does not specifically assert this as to AFRICAP. See generally AR Tab 77. In any event, if the Court's inference is correct, RMGS would have been eliminated from the AFRICAP competition on the basis of its technically unacceptable proposal before it received its Advisory award, despite the fact that it learned of its unsuccessful

**V.     Evaluation of Offers and Award of the ACOTA Contract**

Meanwhile, the ACOTA evaluation process proceeded at State. In accordance with the RFP, the agency used the cost-technical tradeoff source selection process, as defined in FAR 15.101-1. AR Tab 5 at 240. The RFP stated that the award would be provided to the offeror whose proposal provided the best value to the government and that "all evaluation factors other than price, when combined, are significantly more important than price." Id.

As noted above, the agency received twenty-nine proposals in January 2016, five months before Advisory proposals were received in May 2016. As part of the ACOTA procurement process, the Technical Evaluation Team ("TET") reviewed the proposals and assigned ratings for the four non-price factors. Based on the ratings, the TET found that eight out of twenty-two small-business offerors, including RMGS, had submitted "technically acceptable" proposals. AR Tab 29 at 2989–90. The table below combines data from various charts in the Administrative Record and shows the factor ratings and proposed prices of all eight of these "technically acceptable" proposals, including RMGS's proposal. The Court has rearranged the seven other offerors in order of the technical rankings assigned by the TET, with RMGS added at the bottom. AR Tab 31 at 3077–78. For ease of understanding, the rows showing the four small-business awardees under the ACOTA RFP are shaded.

| Offeror | Factor 1: Technical Approach | Factor 2: Management Approach | Factor 3: Similar Experience | Factor 4: Past Performance | Factor 5: Price |
|---|---|---|---|---|---|
| Blue Force | SUPERIOR | SUPERIOR | VERY RELEVANT | SATISFACTORY CONFIDENCE | $723,534,041 |
| Celestar | SUPERIOR | ACCEPTABLE | VERY RELEVANT | SUBSTANTIAL CONFIDENCE | $745,277,063 |
| ATSI | ACCEPTABLE | ACCEPTABLE | RELEVANT | SUBSTANTIAL CONFIDENCE | $613,634,704 |
| Downrange | ACCEPTABLE | ACCEPTABLE | SOMEWHAT RELEVANT | SATISFACTORY CONFIDENCE | $547,133,677 |
| OTTS | MARGINAL | ACCEPTABLE | SOMEWHAT RELEVANT | SATISFACTORY CONFIDENCE | $[***] |
| VxL | ACCEPTABLE | MARGINAL | SOMEWHAT RELEVANT | UNKNOWN CONFIDENCE | $[***] |

---

status under AFRICAP after the Advisory award. Although it finds that RMGS's protest fails due to both lack of standing and waiver, the Court also observes that contrary to RMGS's argument, State's failure to mention the OCI clause in the AFRICAP debriefing does not somehow constitute a complete waiver of enforcement of the OCI clause.

| Offeror | Factor 1: Technical Approach | Factor 2: Management Approach | Factor 3: Similar Experience | Factor 4: Past Performance | Factor 5: Price |
|---|---|---|---|---|---|
| NEWS | ACCEPTABLE | MARGINAL | SOMEWHAT RELEVANT | UNKNOWN CONFIDENCE | $[***] |
| RMGS | MARGINAL | ACCEPTABLE | RELEVANT | SATISFACTORY CONFIDENCE | $[***] |

See Def.'s MJAR at 21–22; AR Tab 29 at 2988–89, 3001–02. The four non-price factors were numbered in order of importance as specified in the RFP; thus Factor 1, Technical Approach, was more important than the other factors, Factor 2 was next in importance, and so on. AR Tab 5a at 241.

As noted in footnotes to a table contained in the Award decision, which summarizes the ratings of all twenty-two of the small-business offerors, four of them (RMGS included) were "not eligible for award" under ACOTA because they had received awards under the Advisory RFP. AR Tab 29 at 2988–89 nn.1–4. RMGS was the only one of these ineligible offerors whose proposal was also found technically acceptable. Thus, a "Cost-Technical tradeoff" analysis was performed for "the seven (7) technically acceptable offerors not precluded from award by organizational conflict of interest." Id. at 3000. Ultimately, the Contracting Officer found that offerors "Blue Force, Celestar, ATSI, and Downrange . . . provide[d] the best-value/most advantageous solution to [State]." Id. at 3029. These four offerors received awards under the ACOTA RFP on April 13, 2018. AR Tab 77 at 5679; see also AR Tab 46 at 4405. Three large-business offerors also received ACOTA awards: Engility Corporation; Michael Baker Global Services, LLC; and Defendant-Intervenor PAE. AR Tab 47 at 4407.

**VI.     State Continues To Inquire Whether RMGS Wishes To Extend the Validity of Its Offer on ACOTA RFP, Even After RMGS Received the Advisory Contract Award**

As described above, RMGS was disqualified from consideration for the ACOTA contract during the time period between the TET's assignment of factor ratings and the Contracting Officer's tradeoff analysis, due to RMGS's receipt of an award under the Advisory RFP. Nonetheless, RMGS continued to receive requests from State asking it to extend the validity of its ACOTA proposal, even after it received an award under the Advisory RFP, due to what State characterizes as "an administrative error." AR Tab 77 at 5682–83. In any event, all offerors under ACOTA, including those who had received Advisory awards, continued to extend the validity of their proposals pursuant to the government's requests. See generally AR Tabs 13–23.

**VII.    RMGS Requests Debriefing**

Following the announcement of ACOTA awards to the four successful small-business offerors, RMGS requested a debriefing from State. AR Tab 48.1 at 4472.1. State responded via email on April 25, 2018, reiterating the text of the OCI clause and informing RMGS that due to its award of an Advisory contract, it "was not considered eligible for award under [the ACOTA RFP]." Id. The email went on to relay that "[g]iven the timing of award of the [ACOTA]

7

contract, an initial evaluation of your proposal was completed and we can offer the following information relevant to your proposal." Id. The email then listed RMGS's ratings for the four non-price factors evaluated by the TET, as well as specific strengths and weaknesses identified by the Source Selection Authority and Contracting Officer.[4] Id. at 4472.1–72.2.

## VIII. GAO Bid Protest

RMGS filed a bid protest with GAO on May 2, 2018. AR Tab 75. RMGS specifically challenged its disqualification from award under ACOTA based on its acceptance of the Advisory contract award.[5] Id. at 5658. On May 23, GAO dismissed RMGS's protest as untimely and for lack of standing. AR Tab 83. GAO summarized its findings as to the protests of RMGS and similarly situated offeror Barbaricum LLC as follows:

> The Advisory RFP was issued on March 10, 2016. The RFP's OCI clause stated "[a]ny award resulting from the competition under [the Advisory RFP would] preclude award under Solicitation Numbers SAQMMA15R0022 (AFRICAP) and SAQMMA15R0318 (ACOTA)." . . . The closing date was May 10. RMGS and Barbaricum signed contracts, on February 23, and May 9, 2017, respectively, that included the OCI clause. RMGS and Barbaricum first protested the application of the OCI clause in May 2018. Accordingly, RMGS's and Barbaricum's failure to protest this clause until nearly two years after the closing date in the Advisory RFP (and nearly a year after signing their Advisory contracts with the agency) makes these protests untimely.

Id. at 5956. GAO also concluded that RMGS and Barbaricum did not qualify as "interested parties" because they were "ineligible to receive award under [ACOTA]" due to the OCI clause. Id. at 5956–57.

## IX. The Present Bid Protest

Approximately three months after GAO's dismissal of RMGS's protest, RMGS filed the instant protest in the Court of Federal Claims on August 21, 2018. See generally Compl. In Count I of the complaint, RMGS alleges that State's handling of the ACOTA award competition was arbitrary and capricious because the government "appl[ied] unstated evaluation criteria" when it treated RMGS as ineligible for award due to the Advisory RFP's OCI clause. Id. at ¶¶ 30–36. In Count II of the complaint, RMGS alleges that State violated the Competition in Contracting Act ("CICA") "[b]y issuing the Advisory RFP with its restrictive OCI clause after

---

[4] The parties dispute whether or not the subject email in fact constituted a "debriefing." See Def.'s MJAR at 11; Pl.'s Mem. at 17. The Court makes no finding on this issue as it is not critical to the Court's determinations that RMGS lacks standing and has waived its ability to protest.

[5] RMGS has not protested the award decisions under AFRICAP either at GAO or in the Court of Federal Claims. As explained above, AFRICAP awards were made on May 3, 2017—about three months after Advisory awards and almost one year before ACOTA awards. AR Tab 86 at 5969.

8

receiving proposals for both AFRICAP and ACOTA," thereby "unnecessarily restrict[ing] competition." Id. at ¶¶ 37–40. Counts III through V of the complaint allege claims for "misleading discussions," "unreasonable delay," and violations of applicable acquisition regulations, respectively. Id. at ¶¶ 41–52.

On August 30, 2018, PAE joined the case as a defendant-intervenor. ECF Nos. 12, 14. PAE is an awardee under both the ACOTA and AFRICAP RFPs. PAE's Mot. to Intervene as Def. at 1 & n.1, ECF No. 12. After the government filed the Administrative Record ("AR") on September 10, both RMGS and the government moved to supplement the AR on September 19 and 20, respectively. ECF Nos. 19, 23, 24. The Court granted the government's unopposed motion to supplement. ECF No. 25. It also granted RMGS's motion—which the government opposed—on November 9, 2018. ECF No. 42.

As discussed above, all three parties filed MJARs and the government also filed a motion to dismiss. After all of the cross-motions were fully briefed, oral argument was held on November 15, 2018.

## DISCUSSION

The government and PAE have moved to dismiss this bid protest. They argue that RMGS (a) has failed to establish its standing as an interested party and (b) has waived its claims pursuant to the rule announced in Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed. Cir. 2007). For the reasons set forth below, the Court agrees with government and PAE. Accordingly, RMGS's bid protest must be dismissed.

**I.      RMGS Has Not Established Its Standing**

   **A.      Applicable Law**

The Court of Federal Claims has jurisdiction over bid protests in accordance with the Tucker Act, 28 U.S.C. § 1491, as amended by the Administrative Dispute Resolution Act of 1996 § 12, 28 U.S.C. § 1491(b). Specifically, the Court has the authority "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380–81 (Fed. Cir. 2012) (observing that § 1491(b)(1) "grants jurisdiction over objections to a solicitation, objections to a proposed award, objections to an award, and objections related to a statutory or regulatory violation so long as these objections are in connection with a procurement or proposed procurement").

To possess standing to bring a bid protest, a plaintiff must be an "interested party"—i.e., an actual or prospective bidder (or offeror) who possesses a direct economic interest in the procurement. Sys. Application & Techs., Inc., 691 F.3d at 1382 (citing Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009)); see also Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348 (Fed. Cir. 2013). An offeror has a direct economic interest if it suffered a competitive injury or prejudice as a result of an alleged error in the procurement process. Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002) (holding

9

that "prejudice (or injury) is a necessary element of standing"); see also Weeks Marine, Inc., 575 F.3d at 1360.

In post-award protests, like this one, a plaintiff may demonstrate competitive injury or prejudice by showing that it would have had a "substantial chance" of winning the award "but for the alleged error in the procurement process." Weeks Marine, Inc., 575 F.3d at 1359–62 (quoting Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003)). In making the standing determination, the Court assumes well-pled allegations of error in the complaint to be true. Square One Armoring Serv., Inc. v. United States, 123 Fed. Cl. 309, 323 (2015) (citing Digitalis Educ. Sols., Inc. v. United States, 97 Fed. Cl. 89, 94 (2011), aff'd, 664 F.3d 1380 (Fed. Cir. 2012)); see also Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot., 550 F.3d 1121, 1131–32 & n.9 (Fed. Cir. 2008) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).

If subject matter jurisdiction is challenged, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The party invoking a court's jurisdiction bears the burden of establishing it, and must ultimately do so by a preponderance of the evidence. Id.; Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

  **B.**  **Analysis**

Here, RMGS alleges that it was erroneous for the government to disqualify it from award under the ACOTA RFP on the basis of the Advisory RFP's OCI clause. Thus, the critical jurisdictional inquiry is whether, in the absence of disqualification on OCI grounds, RMGS stood a "substantial chance" of winning an ACOTA award. See Weeks Marine, Inc., 575 F.3d at 1359–62. RMGS's complaint does not make detailed allegations as to the evaluation of ACOTA proposals, including RMGS's ratings assigned prior to its disqualification. The complaint summarily alleges that RMGS "is an interested party as it submitted a proposal . . . and had a substantial chance of receiving the contract but for the alleged errors" in the procurement process. Compl. ¶ 29. This allegation is a legal conclusion, thus the Court need not assume it to be true. See, e.g., Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016) ("In deciding a motion to dismiss . . . courts are not required to accept [as true] a complaint's legal conclusions.") (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

The Court concludes that RMGS has not established its own standing because the record does not support its bare assertion that it had a "substantial chance" of winning an ACOTA award but for its disqualification on OCI grounds. For ease of reference, the table above showing State's evaluations of the eight technically acceptable proposals is again set forth below:

| Offeror | Factor 1: Technical Approach | Factor 2: Management Approach | Factor 3: Similar Experience | Factor 4: Past Performance | Factor 5: Price |
|---|---|---|---|---|---|
| Blue Force | SUPERIOR | SUPERIOR | VERY RELEVANT | SATISFACTORY CONFIDENCE | $723,534,041 |

10

| Offeror | Factor 1: Technical Approach | Factor 2: Management Approach | Factor 3: Similar Experience | Factor 4: Past Performance | Factor 5: Price |
|---|---|---|---|---|---|
| Celestar | SUPERIOR | ACCEPTABLE | VERY RELEVANT | SUBSTANTIAL CONFIDENCE | $745,277,063 |
| ATSI | ACCEPTABLE | ACCEPTABLE | RELEVANT | SUBSTANTIAL CONFIDENCE | $613,634,704 |
| Downrange | ACCEPTABLE | ACCEPTABLE | SOMEWHAT RELEVANT | SATISFACTORY CONFIDENCE | $547,133,677 |
| OTTS | MARGINAL | ACCEPTABLE | SOMEWHAT RELEVANT | SATISFACTORY CONFIDENCE | $[***] |
| VxL | ACCEPTABLE | MARGINAL | SOMEWHAT RELEVANT | UNKNOWN CONFIDENCE | $[***] |
| NEWS | ACCEPTABLE | MARGINAL | SOMEWHAT RELEVANT | UNKNOWN CONFIDENCE | $[***] |
| RMGS | MARGINAL | ACCEPTABLE | RELEVANT | SATISFACTORY CONFIDENCE | $[***] |

Although RMGS argues that this "makeshift chart" amounts to "conjecture" because State did not include RMGS in its cost-technical tradeoff (Pl.'s Mem. at 8–9), the data in the table is taken directly from the Administrative Record.[6] See AR Tab 29 at 2988–89, 3001–02. Moreover, the burden of showing standing by a preponderance of the evidence lies with RMGS. Reynolds, 846 F.2d at 748. RMGS must therefore make an affirmative showing in addition to refuting the government's arguments.

      The Court finds that RMGS has not satisfied its burden to show, by a preponderance of the evidence, that it had a "substantial chance" of winning an ACOTA contract but for the application of the OCI clause. Although RMGS has argued that the table above shows only "initial" rather than "final" evaluations (Nov. 15, 2018 Hr'g ("Hr'g") at 2:07:15–10:10), the ratings on the factors themselves were "final," notwithstanding that RMGS's proposal was not included in the tradeoff analysis (Hr'g at 2:28:20–29:45). Based upon the ratings and the substance of the tradeoff analysis conducted for the other seven offerors listed in the table, RMGS has not met its burden on the "substantial chance of award" inquiry.

---

[6] The table appearing in this Opinion and Order is a reproduction of the one included in the government's brief, with the exception of the gray shading added by the Court to denote the ACOTA awardees. The Court also rearranged the other seven offerors to show their technical rankings assigned by the TET. See AR Tab 31 at 3077–78.

11

In a nutshell, there is nothing in the record to indicate that RMGS more likely than not could have won the award given to Downrange, the lowest-ranked awardee. In comparing Downrange with non-awardee OTTS, the cost-technical tradeoff analysis concluded: "The higher proposed price of [OTTS] is not worth the price premium of [***]% when compared to Downrange. . . . Downrange's proposal presents a superior technical approach, at a lower overall price." AR Tab 31 at 3102–04.

Extrapolating from the foregoing comparison, it is unlikely that RMGS could have beaten Downrange in the tradeoff analysis. RMGS had identical ratings to OTTS for each factor except Factor 3, Similar Experience (RMGS achieved a "Relevant" rating as opposed to OTTS's "Somewhat Relevant") and price.[7] The difference in price is particularly striking; RMGS's proposed price exceeds OTTS's by almost $[***], or [***]%. In addition, RMGS's price exceeds Downrange's price by more than $[***], or approximately [***]%. On the price factor, RMGS's price was lower than the proposed prices of only the top two offerors—both of whom achieved a "Superior" rating on the most important factor and either matched or surpassed RMGS on each of the remaining non-price factors.

Considering the large sums of money involved and the Contracting Officer's conclusion that OTTS's proposal was not worth [***]% premium as compared with Downrange, the Court is skeptical that RMGS would have fared any better than OTTS in the tradeoff analysis. See AR Tab 31 at 3072 ("As non-price factors, when combined, become more equal, the evaluated price rises in importance and may become the determining factor."). This conclusion is buttressed by the fact that RMGS, like OTTS, achieved a "Marginal" rating on the most important factor as compared with Downrange's superior "Acceptable" rating. The Court is not convinced that RMGS had any chance of prevailing over Downrange or the other, higher-ranked offerors in the tradeoff analysis.

Furthermore, although the government represented at oral argument that it likely had the discretion to make additional small-business awards (Hr'g at 2:27:25–55), RMGS has not set forth any reason that the government would have—more likely than not—awarded it an ACOTA contract in the absence of the OCI clause. As discussed above, RMGS's ratings on non-price factors were very similar to those of non-awardee OTTS with the exception of Factor 3, the second-to-least important factor. None of RMGS's arguments explain how it would have had a "substantial chance" of securing an award in light of its similar ratings to OTTS alongside its [***]% price premium.[8] In fact, based on RMGS's high price alone the Court finds that—under

---

[7] Although certain tables in the record list OTTS's Factor 3 rating as "Relevant" (see, e.g., AR Tab 29 at 3001; AR Tab 31 at 3078, 3094), the Court infers that the true rating was "Somewhat Relevant" based upon the comprehensive evaluation of OTTS's proposal. AR Tab 28a14 at 2903. In any event, this discrepancy is immaterial here because if OTTS's Factor 3 rating was in fact "Relevant," then standing would be even more difficult for RMGS to establish. In that case, none of OTTS's ratings would be lower than RMGS's ratings.

[8] The Court again notes that the TET ranked OTTS above offerors VxL and NEWS. See AR Tab 31 at 3077–78.

the preponderance of the evidence standard—RMGS did not have a substantial chance of award even in the absence of the OCI clause.

In summary, RMGS has not met its burden to establish it had a "substantial chance" of winning an ACOTA award but for State's alleged error. Therefore, the Court finds that RMGS lacks standing and its protest must be dismissed for lack of subject matter jurisdiction.

## II. Even If RMGS Had Standing, Its Claims Would Be Barred by the Waiver Rule Announced in Blue & Gold

For the reasons set forth above, RMGS has not established its standing to sue as an interested party under § 1491(b). But even had it done so, the Court would nonetheless dismiss this protest because it is barred by the waiver rule first set forth in the Federal Circuit's Blue & Gold decision.

### A. Applicable Law

In Blue & Gold, the Federal Circuit held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection afterwards in a [bid protest] action" in this court. 492 F.3d at 1315. Although the Tucker Act does not contain an express time-for-filing rule akin to GAO's timeliness regulation, the court of appeals recognized a waiver rule based on the statutory instruction to "give due regard" to "the need for expeditious resolution of" bid protests.[9] Id. (quoting 28 U.S.C. § 1491(b)(3)).

One key rationale for the adoption of the waiver rule in Blue & Gold was the court's recognition that "[i]t would be inefficient and costly to authorize [bid protests] after offerors and the agency had expended considerable time and effort submitting or evaluating proposals in response to a defective solicitation." Id. at 1314. Accordingly, prospective contractors "cannot sit on their rights to challenge what they believe to be an unfair solicitation, roll the dice and see if they [are awarded a contract] and then, if unsuccessful, claim the solicitation was infirm." Id. In other words, the waiver rule is meant to limit, as much as possible, "costly after-the-fact litigation." Id.

Following Blue & Gold, courts grappling with the newly announced waiver rule were tasked with determining how broadly the rule should be applied. For example, the decision did not expressly dictate the proper rule if an error in the procurement process came to light after the time for submitting proposals had closed, but before awards were made. The Federal Circuit addressed this issue in COMINT Systems Corp. v. United States, wherein it expanded the waiver rule "to all pre-award situations." 700 F.3d 1377, 1382 (Fed. Cir. 2012). The court held that "assuming there is adequate time in which to do so, a disappointed bidder must bring a challenge to a solicitation containing a patent error or ambiguity prior to the award of the contract." Id. As

---

[9] GAO regulations provide that "[p]rotests based upon alleged improprieties in a solicitation which are apparent prior to bid opening or the time set for receipt of initial proposals shall be filed prior to bid opening or the time set for receipt of initial proposals." 4 C.F.R. § 21.2(a)(1).

13

to the specific facts of the case, the court found the plaintiff had "more than an adequate opportunity to object" in the two-and-a-half months between an allegedly defective amendment to the solicitation and the award of the subject contract. Id. at 1382–83. In the court's view, the plaintiffs in COMINT were attempting to do "precisely what Blue & Gold forbids." Id. at 1383.

The Federal Circuit has also expressly clarified that "mere notice of dissatisfaction or objection is insufficient to preserve [an offeror's] defective-solicitation challenge." Bannum, Inc. v. United States, 779 F.3d 1376, 1380 (2015). In order to avoid waiving objections to patent pre-award errors, prospective and actual offerors must file a formal agency protest, GAO protest, or lawsuit in the Court of Federal Claims. See id. This rule ensures that protestors are "granted certain remedies [afforded in formal protests] (a stay of award) and ensures that the government will resolve the matter in a timely fashion." Id.

In summary, where parties participating in a procurement process have pre-award notice of the grounds upon which they object to the process, yet wait to see whether they nonetheless receive an award, any protest based upon those grounds must be barred as a matter of equity. See Phoenix Mgmt., Inc. v. United States, 125 Fed. Cl. 170, 180 n.6 (2016) ("[T]he waiver rule . . . 'creates an equitable, rather than jurisdictional, bar to a disappointed offeror's untimely challenge to the terms of a government solicitation.'") (quoting Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 698 (2010)).

### B. Analysis

The waiver rule announced in Blue & Gold—particularly as further explained and applied in COMINT—applies squarely to this case. Although RMGS attempts through argument to complicate matters and avoid the waiver rule by characterizing its protest as one based on the use of "unstated evaluation criteria" in the ACOTA RFP, the proper analysis is rather straightforward. RMGS not only had notice as early as March 2016 that State planned to disqualify Advisory contract awardees from award under ACOTA and AFRICAP, it had actual knowledge of that condition. First, State communicated its intention unequivocally through: (1) the express terms of the Advisory RFP and (2) its answers to offerors' questions. Second, State had direct email exchanges with RMGS in which it gave RMGS the opportunity as an apparent awardee under the Advisory RFP to rescind its Advisory proposal. Moreover, the OCI clause was expressly written into the Advisory contract executed by RMGS in February 2017.

There were several critical, pre-award junctures in the procurement process when RMGS could have, but did not, file a formal protest to object to the OCI clause. First, it could have filed a protest related to either the Advisory RFP or the ACOTA RFP after the Advisory RFP was originally issued on March 10, 2016. The record and the parties' briefing establishes that RMGS immediately viewed the OCI clause as unduly restrictive, and that RMGS wished to both remain eligible for an ACOTA contract and compete for an Advisory contract. See, e.g., Compl. ¶¶ 17–18; see generally AR Tab 84. By the unequivocal and clear terms of the OCI clause, such an outcome was impossible unless the clause was struck or altered in some way.

In the event that RMGS was in doubt as to whether the clause truly meant what it said, and to ascertain whether it would learn of its status under ACOTA before submitting an Advisory proposal, it could have waited to protest until after the Questions and Answers were

14

released on April 4, 2016. AR Tab 54 at 4659. However, after the Questions and Answers were released, there was no doubt that (1) Advisory awardees would be ineligible for award under ACOTA (and AFRICAP) and (2) ACOTA offerors would not necessarily be able to learn their award status before submitting Advisory proposals. AR Tab 54c at 4883. The Questions and Answers also revealed that apparent awardees for the Advisory contract would be given the chance to rescind their proposals, thus foreshadowing that Advisory awards might be announced before ACOTA awards. Id. at 4884.

To be sure, the timing of the RFPs and the effect of the Advisory RFP's OCI clause required prospective offerors to weigh the risks and benefits of submitting proposals for all three RFPs. Nonetheless, the terms of the OCI clause were clear and unequivocal, especially following the publication of the Questions and Answers. RMGS could have protested the OCI clause at that time to raise its concerns with the restrictions it imposed.

Next, RMGS could have protested after it received notice that it was an apparent awardee under the Advisory RFP and was given the opportunity to rescind its Advisory proposal.[10] The notice contained an explicit, verbatim reminder of the Advisory RFP's OCI clause. It is unreasonable for RMGS to now claim it was surprised to find out it was ineligible for an award under ACOTA in the face of this explicit notice of the OCI clause.

Finally, the OCI clause was included in the Advisory contract RMGS executed with State in February 2017. By executing the contract, RMGS agreed to disqualification from the ACOTA and AFRICAP procurements. As detailed above, RMGS had ample notice of the OCI clause by the time the agreement was executed, and it proceeded without any formal objection or protest.

Although RMGS would have the Court believe that it is protesting the evaluation of proposals under the ACOTA RFP rather than the OCI clause contained in the Advisory RFP solicitation, this argument is a semantic one that does not defeat application of the waiver rule. As set forth in COMINT, the waiver rule applies in "all pre-award situations." 700 F.3d at 1382. As RMGS readily acknowledges, it "expressed its concern" with the OCI clause almost immediately after the Advisory RFP was published. Its failure to take the additional step of filing a formal protest regarding either the Advisory or ACOTA RFP is fatal to its ability to bring the present protest now that the OCI clause has been applied to disqualify it from award under ACOTA. RMGS had all the information it needed to protest the OCI clause well in advance of the award of ACOTA contracts.

In sum, rather than file a formal protest based on what it deemed to be an overly restrictive OCI clause promptly after learning of the restriction, RMGS waited to formally raise its objections until after it had been awarded the Advisory contract and then denied award under ACOTA. While RMGS argues otherwise now, it should not have been surprised to learn in April

---

[10] The Court rejects RMGS's contention that it had to decide whether to rescind "under duress." Pl.'s Mem. at 7. It should have been prepared for this possibility because State set forth this optional rescission procedure in its answers to offerors' questions, which were published more than five months before the notice of apparent award was emailed to RMGS in September 2016. See AR Tab 54 at 4659.

15

2018 that it was ineligible for award—it had known about the OCI clause for more than two years. Courts have held that an interval of two-and-a-half months affords "more than an adequate opportunity to object" to an alleged error in a procurement. See COMINT, 700 F.3d at 1382–83. Because RMGS's first formal protest of the OCI clause came post-award in May 2018, its present protest of the ACOTA procurement must now be dismissed.

### III.   RMGS's Remaining Arguments Lack Merit

To the extent that RMGS's claims alleged in Counts III and IV of its complaint could be viewed as proper post-award claims (i.e., not waived under Blue & Gold), and assuming for the sake of this analysis that RMGS has standing, its remaining claims are unavailing.[11]

#### A.   Count III: Misleading Discussions

Reading RMGS's complaint generously, it arguably did not waive its claim of "misleading discussions" because, taking the allegations as true, it did not know it was misled until after awards were announced.[12] In essence, RMGS alleges that State misled it for "over a year" by asking RMGS to verify and extend the validity of its ACOTA proposal. Compl. ¶¶ 42–43.

"[M]isleading discussions are characterized by communications from the government that are incorrect, confusing or ambiguous." DMS All–Star Joint Venture v. United States, 90 Fed. Cl. 653, 670 (2010). The requirement that discussions be meaningful and not misleading means that an agency must not "misdirect the protestor as it revises its proposal." Greenland Contractors I/S v. United States, 131 Fed. Cl. 216, 225 (2017) (quoting DMS All–Star Joint Venture, 90 Fed. Cl. at 670) (alteration omitted); see also Caddell Constr. Co. v. United States, 125 Fed. Cl. 30, 45 (2016) ("An error in communicating a weakness that causes an offeror to revise its proposal is quintessentially a misleading discussion.").

RMGS's argument fails at the outset because State did not conduct any "discussions" with offerors, let alone misleading ones. See AR Tab 29 at 2999 (Contracting Officer's recommendation stating that "[State] did not conduct discussions with any of the offerors"). "[I]n the context of a government contract proposal, the term 'discussions' has a specific legal definition: 'discussions involve negotiations' and 'are undertaken with the intent of allowing the offeror to revise its proposal.'" Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1332

---

[11] Counts I and II of the complaint are explicitly based on the enforcement of the OCI clause and are therefore waived. In addition, the Court views Count V of the complaint—which alleges violations of State's acquisition regulations—as a waived claim because the claim is essentially another way of phrasing RMGS's objection to the OCI clause. As explained above, RMGS had ample notice of the OCI clause and that it would be applied well in advance of the ACOTA awards. Accordingly, RMGS waived this claim by failing to raise it pre-award.

[12] The Court notes that if in fact RMGS subjectively felt misled, it unreasonably ignored State's clear statements indicating that RMGS would be considered ineligible for award under the ACOTA RFP.

(Fed. Cir. 2004) (quoting Info. Tech., 316 F.3d at 1321). Thus, "the acid test for deciding whether discussions have been held is whether it can be said that an offeror was provided the opportunity to revise or modify its proposal." DynCorp Int'l LLC v. United States, 76 Fed. Cl. 528, 541 (2007) (internal quotations and citations omitted). Necessarily, a misleading-discussions claim requires as a predicate the occurrence of some measure of discussions. See Caddell Constr. Co., 125 Fed. Cl. at 45 ("While an agency has considerable discretion in conducting discussions with offerors, that discretion is not a license to mislead an offeror.") (emphasis supplied); DMS All-Star Joint Venture, 90 Fed. Cl. at 670 ("[D]iscussions become misleading when communications from the government misdirect the protestor as it revises its proposal.") (emphasis supplied).

Furthermore, to the extent that RMGS was subjectively "misled" at all, such misapprehension of State's administrative error was unreasonable in light of the unequivocal nature of the OCI clause and State's email offering RMGS the option of rescinding the Advisory RFP proposal. For all of these reasons, even if RMGS had standing (which it does not), the Court would dismiss this claim for failure to state a claim upon which relief can be granted.

**B.     Count IV: Good Faith and Fair Dealing**

RMGS also alleges, in Count IV of its complaint, that State's "unreasonable delay" in awarding the ACOTA RFP "severely prejudiced" RMGS and violated the agency's "obligation of good faith and fair dealing." Compl. ¶¶ 45–49. Arguably, this claim does not fall completely within the waiver rule because it is based at least in part on the fact that State took "820 days from submission to contract award" in the ACOTA procurement—a fact which RMGS could not have known precisely until after awards were announced. Id. ¶ 45. Assuming that the Court has jurisdiction over the claim, see Def.'s MJAR at 31 (observing that judges of this court "ha[ve] split over whether it possesses jurisdiction to consider claims of breach of the implied duty of good faith and fair dealing in the context of a post-award bid protest") (citing cases on each side of the split)), RMGS's argument clearly lacks merit.

RMGS's argument is predicated on the reasoning of Draken International, Inc. v. United States, wherein another judge on this court opined that "[a]n agency has an obligation of good faith and fair dealing to bidders participating in Federal procurements, and that duty would prohibit an agency from arbitrarily unduly delaying a procurement by stringing offerors along, requiring them to be at the ready at substantial expense for an unnecessarily extended period." 120 Fed. Cl. 383, 395 (2015); see also Mem. in Supp. of Compl. at 21, ECF No. 4. Draken, however, is inapposite here. In light of the clear and unequivocal OCI clause—and State's reiteration thereof in the context of its offer of the option to rescind the Advisory proposal—RMGS was not "strung along." Instead it was on notice in mid-September 2016 that as an awardee under the Advisory RFP, it would be disqualified from the ACOTA and AFRICAP procurements. State did not "requir[e]" RMGS "to be at the ready at substantial expense for an unnecessarily extended period." Draken, 120 Fed. Cl. at 395. Nor was it secretive about its plans to disqualify RMGS and other Advisory awardees from the ACOTA and AFRICAP procurements. That RMGS disagreed with State's decision to implement the OCI clause is a separate issue, and as stated above, RMGS has waived its objections on that score.

In short, RMGS cannot credibly claim that it was "strung along" by State's delay in awarding ACOTA contracts. Taking all of the alleged facts as true, RMGS has failed to state a claim for unreasonable delay or for a breach of the duty of good faith and fair dealing.

## CONCLUSION

For the reasons discussed above, the government's motion to dismiss for lack of jurisdiction is **GRANTED** and RMGS's complaint is **DISMISSED** without prejudice. The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge